## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ANNETTE BONER-CLARK,                                Case No. 1:15-cv-13

       Plaintiff,                                        Beckwith, J.
                                                    Bowman, M.J.

   v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Annette Boner-Clark[1] filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents five claims of error, all of which the Defendant disputes. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

### I. Summary of Administrative Record

On March 30, 2010, Plaintiff protectively filed an application for Disability Insurance Benefits ("DIB"). Thereafter, on October 19, 2011, Plaintiff filed an application for Supplemental Security Income (SSI). In both applications Plaintiff alleges a disability on set date of May 8, 2009. After Plaintiff's applications were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). Two hearings were held, in May 2012 and May 2013, with Plaintiff's counsel present, and where a medical expert, Milton Foreman, Ph.D testified. (Tr. 245-375). On July 29, 2013, Administrative Law Judge (ALJ) Deborah Smith issued an unfavorable decision denying

---

[1] Plaintiff was previously known as Annette Baxter.

1

Plaintiff's applications for SSI and DIB. (Tr. 216-237). Plaintiff now seeks judicial review of that decision.

The record on which the ALJ's decision was based reflects that Plaintiff was born in 1967 and was 46 years old at the time of the ALJ's decision. She attended college and worked as a phlebotomist from 1998 until 2009. (Tr. 675-76). She alleges disability based primarily on low back and leg pain, bilateral knee problems, obesity, fibromyalgia, and depression, anxiety, and panic disorder.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "depression, anxiety, history of back surgery and disc herniation at L5-S1, history of right knee replacement and osteoarthritis of the bilateral knees, and obesity." (Tr. 16). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> The claimant should avoid heights and hazards; she should not use foot controls; the claimant is limited to simple, routine, and repetitive tasks without strict production quotas and work that is not fast-paced; she can engage in simple decision making; she can adapt to only occasional changes in the work place; and she can have occasional and superficial interaction with others.

(Tr. 224). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that although Plaintiff is unable to perform her past relevant work, other jobs exist in significant numbers in the national economy she can perform, including such jobs as production worker, machine operator, and inspector. (Tr. 236-37). Accordingly, the ALJ determined that Plaintiff

is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB or SSI.  *Id.*

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision stands as the Defendant's final determination.  On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) improperly evaluating Plaintiff's mental impairments; 2) improperly formulating her physical RFC; 3) improperly weighing the opinion evidence; 4) improperly evaluating Plaintiff's credibility; and 5) committing various vocational errors.  Upon close analysis, I conclude that none of the asserted errors requires reversal or remand.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then

3

that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered

an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. Specific Errors**

1. *Evaluation of Plaintiff's mental impairments*

Plaintiff's first assignment of error alleges that the ALJ's mental RFC failed to include any work-related restrictions based upon her moderate limitations in concentration, persistence or pace. Plaintiff further asserts that the ALJ's mental RFC also failed to include how many days of work a month she would miss due to her panic disorder and depression.

*A. Relevant Evidence*

In June 2010, psychologist Robyn Hoffman, Ph.D., completed a review of Plaintiff's medical records for the state agency. (Tr. 423-426). Dr. Hoffman determined Plaintiff had moderate limitations in activities of daily living; moderate limitations maintaining social functioning; moderate limitations maintaining concentration, persistence or pace; and no episodes of decompensation. (Tr. 423). Dr. Hoffman opined that Plaintiff "is able to do SRT [simple, repetitive tasks] in a stable environment without strict time or production quotas and where she only has occasional and superficial interaction with others." (Tr. 425-426). In December 2010, after a separate review, Alice Chambly, Psy.D., affirmed Dr. Hoffman's assessment in full. (Tr. 438-444).

In August 2012, Plaintiff's treating psychologist Jeanne Spadafora, Ph.D., completed a mental evaluation form. (Tr. 1024-1030). Dr. Spadafora wrote that she saw Plaintiff twice monthly since April 2010 for anxiety, depression, and a panic disorder. (Tr. 1025). She assessed a current Global Assessment of Functioning (GAF) symptom score of 54, indicating

moderate symptoms.[2] Dr. Spadafora checked boxes indicating that Plaintiff would have very good abilities in most functional areas, but that she would be "seriously limited but not precluded" in her ability to "maintain regular attendance and be punctual," "complete a normal workday and workweek without interruptions from psychologically based symptoms," and "deal with [the] stress of semiskilled and skilled work." (Tr. 1027-1028).

Dr. Spadafora wrote that Plaintiff "has normal mental functioning" but that stress "brings on anxiety [and] impedes her performance." (Tr. 1027). Dr. Spadafora determined Plaintiff had mild limitations in activities of daily living; mild limitations maintaining social functioning; moderate limitations maintaining concentration, persistence or pace; and that she would have two episodes of decompensation per month, each lasting two to three days. (Tr. 1029). Finally, she checked a box indicating that Plaintiff would be absent from work more than four times monthly. (Tr. 1030).

Milton Foreman, Ph.D., a clinical psychologist, testified as the medical expert at a hearing on May 12, 2012. (Tr. 331, 343). Dr. Foreman testified that Plaintiff had mild limitations in activities of daily living; mild limitations maintaining social functioning; moderate limitations maintaining concentration, persistence or pace; and no episodes of decompensation. (Tr. 360-361). In terms of functional limitations, Dr. Foreman stated that "I would think that her work needs to be of low stress. She needs to be primarily seated, and I would then feel that . . . there should be some distance between her and her supervisors, and she shouldn't be working in a team-like environment." (Tr. 362).

---

[2] The GAF Scale reports a clinician's judgment of an individual's overall level of functioning, and is used in planning, measuring the impact, and predicting the outcome of treatment. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000) (DSM-IV-TR). GAF scores from 41-50 indicate serious symptoms or impairments, including suicidal ideation, no friends, and inability to hold a job. DSM-IV-TR at 34. GAF scores from 51-60 indicate moderate symptoms or limitations; scores from 61-70 indicate only mild symptoms or limitations; and from 71-80 slight symptoms or limitations. Id.

When asked about Dr. Spadafora's assessment, Dr. Foreman stated that her treatment notes - that one would normally look to in order for support of a medical opinion - are "abysmal" (Tr. 362). Specifically, Dr. Foreman stated that notes should be "divided in like focal issues of the sessions, your impressions of the session and your plans would be another very common approach. These are, they're very hard to read. There's no structure, and I really looked through that as best I could to try to identify notations addressing concentration and especially addressing these repeated periods where she is immobilized for substantial periods. I couldn't find them." (Tr. 363). Dr. Foreman, upon questioning from Plaintiff's counsel, stated that with Dr. Spadafora's notes "[t]here is no way to support or refute her word." (Tr. 366). As such, Dr. Foreman stated that with respect to "the conclusions of Dr. Spadafora," "we have no supporting documentation." (Tr. 369). Dr. Foreman said Dr. Spadafora's notes were quite different than most he had seen because "much of the time, you can find support for the statements of these mental health experts."  (Tr. 369).

An additional hearing was held on May 23, 2013 so that Plaintiff's counsel could have time to complete his cross examination of Dr. Foreman. (Tr. 245, 247). The ALJ also acknowledged 122 pages of additional evidence she considered since the last hearing. (Tr. 247). Dr. Foreman reiterated his "main criticism of Dr. Spadafora's opinions and the MIQ, Mental Impairment Questionnaire, was that the chart notes" were "not consistent" with her opinions about Plaintiff's functional limitations.  (Tr. 256).

Plaintiff's attorney "asked if some clarification would help from Dr. Spadafora, and Dr. Forman said then it would be after the fact. It might not address the deficiencies in the record during that time that the actual treatment notes were occurring." (Tr. 251). Dr. Foreman looked at Dr. Spadafora's explanation of her notes and stated it was not sufficient. (Tr. 259).

Dr. Foreman testified that Dr. Spadafora's explanation amounted to her "saying [she is] a good trained observer, trust me, and I think that that's far short of documentation." (Tr. 259). When asked if Dr. Spadafora's notes met standards, Dr. Foreman noted that "I'm a mental training director at the University of Cincinnati seven years. It was certainly not the standard that we used and I didn't think the standard that we used was atypical for the training of clinical psychologists." (Tr. 259-260). When asked about inconsistencies between her opinions and her notes, Dr. Foreman noted that "mainly none of her GAF's are outside of the moderate range, and, in fact, her GAF, which was, I have it noted here, Exhibit 25, she gives a 60, which is just one point short of being mild symptoms." (Tr. 262). Dr. Foreman noted that Dr. Spadafora's notes did not reflect any of the variability of her mood; for example, they did not reflect 2-3 days per month of inability to function. (Tr. 262). In short, Dr. Foreman testified that "I'm asked to look at what's the basis for [Dr. Spadafora's opinions regarding Plaintiff's limitations], and it's not there." (Tr. 269).

   *B. ALJ's Decision*

   Upon consideration of the foregoing, at step-two of the sequential evaluation, the ALJ determined that Plaintiff's depression and anxiety were severe impairments.  (Tr. 222). The ALJ then determined that Plaintiff's mental impairments did not meet Listing 12.04 and/or 12.06 which address anxiety related disorders.   In so concluding, the ALJ considered the paragraph B criteria and determined that Plaintiff's mental impairments resulted in mild limitations in activities of daily living, mild to moderate limitations in social functioning, moderate limitations with regard to concentration, persistence or pace and no episodes of decompensation.  (Tr. 223). Thereafter, the ALJ found that Plaintiff is capable of performing simple, routine, and repetitive tasks without strict production quotas and work that is not fast-

paced. The ALJ further determined that Plaintiff can engage in simple decision making; she can adapt to only occasional changes in the work place; and she can have occasional and superficial interaction with others. (Tr. 224).

In so concluding, the ALJ relied on the testimony of Dr. Forman, the medical expert who appeared and testified at the administrative hearing. (Tr. 235). The ALJ determined that his testimony was consistent with and supported by the record evidence. (Tr. 235). The ALJ assigned little weight to the findings of Dr. Spadafora, finding, *inter alia*, that her assessment was not supported by her treatment notes. Plaintiff asserts that the ALJ's decision is not substantially supported in this regard. Plaintiff's contentions are unavailing.

In evaluating the opinion evidence, "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner of Social Sec.,* 581 F.3d 399, 406 (6th Cir.2009) (quoting *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir.2004). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Wilson,* 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2).

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion." 20 C.F.R. § 404.1527(d)(2); *but see Tilley v. Comm'r of Soc. Sec.,* No. 09–6081,

2010 WL 3521928, at *6 (6th Cir.Aug.31, 2010) (indicating that, under *Blakely* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence within the written decision).

Here, as detailed by the Commissioner, the ALJ gave many reasons for giving "little weight" to Dr. Spadafora's assessment.   The ALJ first explained that Dr. Foreman persuasively testified that "Dr. Spadafora's treatment notes do not adhere to normal charting practices within the medical profession." (Tr. 233). The ALJ noted that while Plaintiff's counsel attempted to argue that "Dr. Spadafora's method of keeping treatment notes was just merely different from Dr. Foreman's and not deficient," substantial evidence supported the ALJ's opinion that Dr. Foreman was correct. (Tr. 233). The ALJ explained that she "reviews medical records on a daily basis and sees records across various disciplines provided by numerous types of healthcare providers. The SOAP method that Dr. Foreman referenced is the norm in medical charting for most providers from social workers to surgeons whereby they give detailed descriptions of the claimant's activities, social interactions and reference a patient's ability to concentrate." (Tr. 233). As was explained by Dr. Foreman at the hearing, SOAP stands for "subjective, objection, assessment, and plan," which is a common form of charting treatment notes, which separates out subjective complaints from objective signs, and also requires the doctor to provide an assessment of a Plaintiff's condition and a plan to address it.   (Tr. 255). The common theme of Dr. Foreman's testimony was that Dr. Spadafora's notes lacked all of these elements except Plaintiff's subjective complaints.

The ALJ further explained "[t]here are some variations in the format of treatment notes, but the vast majority include the patient's subjective complaints, the health care provider's objective observations, an assessment or diagnosis of the patient's condition, and a

treatment plan of some kind and many times performance on various types of psychiatric/psychological testing. Dr. Spadafora's notes do not include this crucial information." (Tr. 233).  Dr. Foreman who explained that he had "trained psychologists for years," and so he had knowledge of common and accepted charting standards, which Dr. Spadafora did not follow. (Tr. 317). Dr. Foreman testified that Dr. Spadafora's method fell "far short of [accepted] documentation." (Tr. 259).

The ALJ explained that Dr. Spadafora's "did not provide any objective support in her treatment notes for her assertions that the claimant is unable to work or that she is severely limited in some functional areas." (Tr. 234).  Upon review of Dr. Spadafora's notes, the undersigned agrees.  The ALJ explained that Dr. Spadafora's extreme assessments were inconsistent with the record as a whole. (Tr. 234). Dr. Spadafora assessed GAF scores, which varied between 53 and 60 (indicative of moderate symptoms and limitations), which were inconsistent with her conclusions that Plaintiff could not work or that she was unable to tolerate any workplace stress.[3]   (Tr. 234, 1024-1031, 1113-1115). Moreover, Dr. Spadafora suggested that Plaintiff would have "episodes of decompensation" two times a month lasting two to three days, whereby there is a "complete inability to function independently outside the area of one's home", but the overall record does not support this assertion. (Tr. 234, 1029). The ALJ properly discounted Dr. Spadafora's assessment based on these reasons. *See* 20

---

[3] Plaintiff also argues that the ALJ improperly relied on GAF scores in evaluating the opinion evidence. (See *DeBoard v. Commissioner of Social Security*, 211 F. App'x 411 (6th Cir. 2006) (GAF scores have no direct correlation to the severity requirements of the mental disorders listings).  In this case, however, the  ALJ did not rely on GAF scores when evaluating the mental disorders listings.  As outlined above, the ALJ properly considered the record as a whole when determining Plaintiff's RFC. Furthermore, the Sixth Circuit has explicitly recognized that "a GAF score may be of considerable help to the ALJ in formulating the RFC . . . ." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). GAF scores allow "a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kennedy v. Astrue*, 247 F. App'x 761, 766, (6th Cir.2007). Thus, the ALJ permissibly considered Plaintiff's GAF scores when evaluating the degree of impairment caused by his symptoms.

C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). *See Cutlip v. Sec'y of HHS*, 25 F.3d 284, 287 (6th Cir. 1994) (treating physician opinions are "only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence").

The ALJ also noted that Plaintiff's activities of daily living were not consistent with Dr. Spadafora's assessment stating she had anhedonia or pervasive loss of interest in almost all activities. (Tr. 234, 1024-1031). As the ALJ noted, Plaintiff completed her online degree as a paralegal in 2011, completed some other college coursework, volunteered 20 hours per week, dates men, attends church, cares for her two young children, and got married. (Tr. 145, 234, 289, 777, 782, 786, 801, 809, 1038-1075, 1650). *Berry v. Comm'r of Soc. Sec.,* 289 F. App'x 54, 56 (6th Cir. 2008) ("Berry's ability to live independently and perform regular household activities belies her claim that she is totally disabled.").

Furthermore, the ALJ properly relied upon a medical expert, Dr. Forman to analyze and interpret a complex medical record that consisted of over 1000 pages of medical evidence spanning many years. *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) ("The ALJ could properly rely, in this case, on the testimony of . . . the non-examining medical expert physicians, in order to make sense of the record."). Indeed, the ALJ stated that she "agree[d] with Dr. Foreman's assessments concerning the claimant's condition." (Tr. 234). Dr. Foreman testified that Plaintiff had mild limitations in activities of daily living; mild limitations maintaining social functioning; moderate limitations maintaining concentration, persistence or pace; and no episodes of decompensation. (Tr. 360-361).

The ALJ also reasonably "afforded significant weight" to the opinions of the state agency reviewing physicians who opined that Plaintiff was not disabled and could work with certain limitations. (Tr. 235). *Wisecup v. Astrue*, No. 3:10-cv-325, 2011 WL 3353870, at *7 (S.D. Ohio July 15, 2011) (Ovington, MJ) ("opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight"). Psychologist Robyn Hoffman, Ph.D., opined that Plaintiff "is able to do SRT [simple, repetitive tasks] in a stable environment without strict time or production quotas and where she only has occassional and superficial interaction with others." (Tr. 425-426). After a separate review, Alice Chambly, Psy.D., affirmed Dr. Hoffman's assessment in full. (Tr. 438-444). The ALJ explained that these "findings are consistent with the claimant's school and work activities and are not contradicted by any objective evidence related to the claimant's mental health condition." (Tr. 235). See 20 C.F.R. § 404.1527(c)(4) ("Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). These limitations were consistent with Dr. Foreman's recommended restrictions, as well as with the ALJ's RFC finding.

For these reasons, the undersigned finds that the ALJ properly evaluated Plaintiff's mental RFC and her rationale in support of her findings is supported by substantial evidence and comports with Agency regulations and controlling law.[4]

---

[4] Citing *Ealy v. Commissioner*, 594 F.3d 504 (6th Cir.2009), Plaintiff also asserts that the ALJ's mental RFC and hypothetical question failed to properly accommodate Plaintiff's moderate limitations due to her mental impairments. In *Ealy*, the Sixth Circuit found that where medical source opinions specifically limited Plaintiff's ability to sustain attention and imposed restrictions in pace, speed and concentration, the ALJ's "streamlined" hypothetical omitting those restrictions was insufficient. *Id.* Notably, however, several post-*Ealy* decisions declined to adopt a bright line rule that a limitation to "simple repetitive tasks" in an RFC and hypothetical to the VE is not adequate to address a claimant's moderate impairment as to concentration, persistence, and pace. *See Steed v. Astrue*, No. 4:11 CV204, 2012 WL 1097003, at *9 (N.D.Ohio Mar.30, 2012); *Jackson v. Comm'r of Soc. Sec.*, No. 1:10CV763, 2011 WL 4943966, at *4 (N.D.Ohio Oct.18, 2011). Here, as explained above, the ALJ did not accept the state agency psychologist determination that Plaintiff's mental impairments resulted in

13

*2. Evaluation of Physical impairments*

Plaintiff next argues that the ALJ erred in weighing the opinion of her treating physician, Dr. Walker, in her evaluation of Plaintiff's physical impairments. Specifically, Plaintiff argues that her obesity, low back and leg pain, and knee problems prevent her from sustaining work for 40 hours per week.

In November 2012, Dr. Walker, Plaintiff's treating physician, completed a Lumbar Spine Medical Source Statement, opining that she treated Plaintiff for lower back pain, fibromyalgia, depression and anxiety every three to six months. (Tr. 1125). She wrote that Plaintiff's prognosis was "good." (Tr. 1125). While Dr. Walker noted weight gain, impaired sleep, and reduced range of motion upon forward flexion of the spine, she specifically indicated there was no other positive objective signs such as abnormal gait, sensory or reflex loss, tenderness, muscle spasm or weakness. (Tr. 1125-1126). She wrote that "per patient," Plaintiff could only sit 15-20 minutes at a time, and for less than 2 hours in an 8-hour work day, and stand 10-15 minutes at a time, and for less than 2 hours in an 8-hour work day. (Tr. 1126).

The ALJ, however, gave "little weight" to Dr. Walker's findings.[5] In so concluding, the found that Dr. Walker's extreme limitations were inconsistent with his treatment notes and unsupported by the objective evidence and clinical findings. Notably, the ALJ explained that Dr. Walker found no physical limitations in 2010, but then in November 2012, she noted

---

moderate limitations. Moreover, no medical source imposed any restrictions relating to pace, speed and concentration, as is in *Ealy*, and Plaintiff offers no additional evidence or argument in support of this contention. Accordingly, Plaintiff's assertion should be overruled in this regard.

[5] Dr. Walker also provided assessments of Plaintiff's mental impairments. However, the ALJ noted that Dr. Walker was Plaintiff's primary care physician and mainly treated her physical impairments, and thus she was "not qualified to make judgments concerning the claimant's mental condition." (Tr. 233). *Sherrill v. Sec'y of HHS*, 757 F.2d 803, 805 (6th Cir. 1985) (an internist opinion can be given less weight in a mental impairment case).

14

severe physical limitations "without explaining the reason for the change in her opinion." (Tr. 233). Notably, in March 2010, Dr. Walker wrote that Plaintiff had "normal exams generally" and could "do all physical activities and maneuvers." (Tr. 860-862). Thereafter, in November, 2012, Dr. Walker wrote that she treated Plaintiff for lower back pain and fibromyalgia every three to six months, that her prognosis was "good," and that the only musculoskeletal abnormalities were reduced range of motion upon forward flexion of the spine. (Tr. 1125-1126).

Furthermore, Dr. Walker provided no clinical findings or objective evidence in support of her medical source statement. In this regard, when asked to "identify the clinical findings, laboratory and test results that show your patient's medical impairments," Dr. Walker left this question completely blank. (Tr. 1125). *Ilesamni-Woods v. Astrue*, No. 3:09-CV-0479, 2010 WL 5490998, at *8 (S.D. Ohio Nov. 29, 2010) (Ovington, MJ) (ALJ properly rejected treating physician's opinion where doctor "did not explain his disability conclusions in any meaningful detail"). *See also 20 C.F.R. § 404.1527(d) (3)* ("the better an explanation a source provides for an opinion, the more weight we will give that opinion."). *See Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir.2001) ("[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.")

Additionally, as noted by the Commissioner, the fact that Dr. Walker wrote that the sitting and standing restrictions were "per patient" reasonably lead the ALJ to conclude that "Dr. Walker essentially just accepts the claimant's reports/subjective statements concerning her ability to function ability as true." (Tr. 233). It is well-settled that the ALJ can reasonably discount an opinion based only on Plaintiff's subjective reports. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x. 149, 156 (6th Cir. 2009) ("Here, substantial evidence supports the ALJ's

determination that the opinion of Dr. Boyd, Poe's treating physician, was not entitled to deference because it was based on Poe's subjective complaints, rather than objective medical data."); *See McCoy ex rel. McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995) (ALJ reasonably discounted treating physician's opinion where the claimant's subjective complaints were unsupported by objective findings).

In sum, as found by the ALJ, the record as a whole lacked any objective basis to explain such a drastic change in opinion about Plaintiff's limitations, or to justify the extreme limitations in the 2012 opinion.   (Tr. 226-227, 233). *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). As discussed above, Dr. Walker specifically noted there were very few abnormalities, aside from slightly reduced spinal flexion, to justify Plaintiff's severe physical restrictions.  As such, the ALJ properly rejected her findings.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) ("If the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for her [sic] rejection."). *See also Tyra v. Sec'y of HHS*, 896 F.2d 1024, 1030 (6th Cir. 1990) ("Though claimant's physicians consistently reported Tyra's subjective complaints of pain, he had no underlying neurological abnormalities, atrophy or proportionate loss of sensory and reflex reactions.").

In light of the foregoing, the undersigned finds that the ALJ properly assigned little weight to the findings of Dr. Walker and she gave "good reasons" for doing so in accordance with Agency regulations and controlling law.

3. *ALJ's credibility finding*

Plaintiff's statement of errors also challenges the sufficiency of the ALJ's decision concerning her credibility, arguing that she should have found her entirely credible. Specifically, Plaintiff contends that the ALJ improperly found that Plaintiff worked in 2012 and improperly relied on her activities of daily living to discount her credibility. Plaintiff further asserts that that her disabling complaints of low back and knee pain are supported by the medical evidence of record. Plaintiff's contentions are unavailing.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Comm'r of Social Sec.,* 486 F.3d 234, 247 (6th Cir.2007) (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir.2001).

The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of HHS,* 753 F.2d 517, 519 (6th Cir.1985). In this regard, Social Security Ruling 96–7p explains:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96–7p.

In addition, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to

17

make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* The ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. See 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96–7p.

While an ALJ may properly consider a Plaintiff's inconsistent statements and other inconsistencies in the record, the ALJ must also consider other factors listed in SSR 96–7p, and may not selectively reference a portion of the record which casts Plaintiff in a capable light to the exclusion of those portions of the record which do not. *See Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 240–41 (6th Cir.2002). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir.2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.,* 375 F.3d at 392.

Here, contrary to Plaintiff's contentions, the ALJ properly considered the requisite factors in making her credibility determination. As noted above, Dr. Walker specifically

18

indicated that the only abnormalities supporting her physical limitation restriction was reduced range of motion upon forward flexion of the spine, and there was no other positive objective signs such as abnormal gait, sensory or reflex loss, tenderness, muscle spasm or weakness. (Tr. 1125-1126).  The ALJ also noted that there is no indication that Plaintiff will not make a full recovery from her knee surgery in April 2013 to the extent that she could not perform a sedentary job.  (Tr. 230).

The ALJ also noted that Plaintiff's non-compliance with treatment also made her allegations less than fully credible. In this regard, the ALJ noted that Plaintiff stopped going to physical therapy on two occasions, stating: "if the claimant's pain was as bad as she has alleged, she would have completed her physical therapy regimen to help improve her condition." (Tr. 232). See SSR 96-7p ("the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints"). Likewise, the ALJ documented instances where Plaintiff reported that she was taking more Vicodin than was prescribed to her, requesting early refills of Lonazepam, and using some medications excessively. (Tr. 232, 799, 1675-1677).

The ALJ also properly considered Plaintiff's ability to engage in certain daily activities. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain."); *see also* Soc. Sec. Ruling 96-7p, 1996 WL 374186. For example, the ALJ noted that Plaintiff was able to work after her alleged onset date, complete her online degree as a paralegal in 2011, volunteer 20 hours of week, attend church, care for her two young children, and get married. (Tr. 145, 234, 289, 777, 782, 786, 801, 809, 1038-1075, 1650). *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 686 (6th Cir. 1992) (The ALJ properly noted that

19

"plaintiff typically engaged in such household chores as grocery shopping (and carrying the bags), dishwashing, cooking, sweeping and driving. Therefore, the ALJ concluded that plaintiff's pain would not be so disabling as to prevent him from engaging in gainful employment").

This Court must affirm so long as substantial evidence exists in the record as a whole to support the ALJ's decision, even if substantial evidence also can be found to support a contrary conclusion as to the credibility of a plaintiff's complaints. Although this Court may have taken another view of these facts and decided them more favorably, the ALJ was well within his zone of choice to decide them against Plaintiff's claim. *Felisky,* 35 F.3d at 1035. Accordingly, reviewing the record as a whole, the undersigned concludes that substantial evidence exists to affirm the ALJ's credibility finding[6]

### 4. Vocational Issues

Last, Plaintiff argues that the ALJ's hypothetical questions were insufficient because they failed to account for all of her credible limitations as found by Dr. Spadafora. An ALJ may rely on the testimony of a vocational expert to determine whether jobs would be available for an individual who has particular workplace restrictions. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of a conclusion that the claimant can perform other work, the question must accurately portray the

---

[6] Plaintiff noted that she did not work in 2012 and that earnings posted to her records in this year were due to identity theft. It should be noted that Plaintiff presented this evidence after her hearings, and at the time of her hearings, she did "not allege[] that the earnings listed . . . were reported in error," and thus has waived this argument. (Tr. 221). *Harper v. Sec'y of HHS,* 978 F.2d 260, 265 (6th Cir. 1992) ("Because the record does not indicate that the issue was raised at the administrative level, we are not in a position to consider the issue."). In an any event the record indicates that Plaintiff has worked after her alleged onset date. (Tr. 219, 800-801, 831, 855). Accordingly, the ALJ's credibility findings, in totality, are substantially supported.

claimant's physical and mental impairments. *See Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 516 (6th Cir.2010).

In this case, to the extent Plaintiff argues that her functional limitations were greater than those found by the ALJ, the Court has already rejected that argument. As noted above, the ALJ properly determined that Dr. Spadafora's extreme limitations are not supported by the record and were therefore not adopted. The ALJ posed a complete hypothetical question to the VE—asking him to consider an individual with Plaintiff's age, education, work experience, and RFC—and reasonably accepted the VE's testimony that the hypothetical individual described could perform work that exists in significant numbers in the national economy. This testimony provides substantial evidence to support the ALJ's finding that Plaintiff is not disabled. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir.1994) (where hypothetical accurately described the plaintiff in all relevant respects, the VE's response to the hypothetical question constitutes substantial evidence).

Accordingly, the ALJ's decision is substantially supported in this regard.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT**: 1) the decision of the Commissioner to deny Plaintiff's benefits be **AFFIRMED** because it is supported by substantial evidence in the record as a whole; and 2) as no further matters remain pending for the Court's review, this case be **CLOSED.**

*/s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ANNETTE BONER-CLARK,                                    Case No. 1:15-cv-13

       Plaintiff,                                    Beckwith, J.
                                                    Bowman, M.J.

   v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).